## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| Honeywell International Inc., Vocollect, Inc., and Intelligrated Headquarters LLC, | CIVIL ACTION NO. _____ |
| *Plaintiffs*, | |
| v. | **JURY TRIAL DEMANDED** |
| EPS – Ehrhardt + Partner Solutions, Inc., | |
| *Defendant*. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Honeywell International Inc., Vocollect, Inc., and Intelligrated Headquarters LLC (collectively, "Honeywell" or "Plaintiff"), by and through their undersigned counsel, file this Complaint against EPS – Ehrhardt + Partner Solutions, Inc. ("EPS" or "Defendant") and allege on knowledge as to their own actions and upon knowledge and information and belief as to the actions of others as follows:

## NATURE OF THE ACTION

1.     This action arises under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, from EPS's unauthorized patent infringement under 35 U.S.C. § 271 of United States Patent Nos. 8,386,261 ("'261 Patent"); 9,152,940 ("'940 Patent"); 10,049,504 ("'504 Patent"); 10,769,863 ("'863 Patent"); 11,158,336 ("'336 Patent"); 12,057,139 ("'139 Patent"); 12,400,678 ("'678 Patent") (collectively, the "Asserted Patents") (*see* Exhibits 1-7).

## THE PARTIES

2.      Plaintiff Honeywell International Inc. ("Honeywell International") is a Delaware corporation with its principal place of business at 855 S. Mint Street, Charlotte, North Carolina 28202.

3.      Plaintiff Vocollect, Inc. ("Vocollect") is a Pennsylvania corporation with its principal place of business at 855 S. Mint Street, Charlotte, North Carolina 28202. Vocollect is an indirect, wholly-owned subsidiary of Honeywell International.

4.      Plaintiff Intelligrated Headquarters LLC ("Intelligrated") is a Delaware limited liability company with its principal place of business at 855 S. Mint Street, Charlotte, North Carolina 28202. Intelligrated is an indirect, wholly-owned subsidiary of Honeywell International.

5.      Defendant EPS – Ehrhardt + Partner Solutions, Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 17505 Interstate Hwy. 35W, Northlake, TX 76262. Exhibit 8 at p.1.

## JURISDICTION AND VENUE

6.      This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action involves a claim arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*.

7.      This Court has personal jurisdiction over EPS under the laws of this State and consistent with the underlying due process principles of the United States Constitution. EPS maintains its principal place of business in this judicial district and regularly and systematically transacts business in this judicial district and has committed acts of infringement within the State of Texas and within this judicial district. For example, EPS confirmed that its principal place of business is located at 17505 Interstate Hwy, 35W, Northlake, TX 76262, thus confirming that EPS regularly and systematically transacts business within the State of Texas. Exhibit 8 at p.1; *see also*

https://lydia-voice.com/us/legal-notice/ (last accessed 8/26/2025). Upon information and belief, one or more employees or agents of EPS are routinely physically present at EPS's Texas facility for the purpose of conducting EPS's business. For example, EPS is currently hiring a "Software/Application Analyst" at multiple EPS locations, including EPS' Texas facility. Exhibit 16. Upon information and belief, EPS provides infringing products to customers in the State of Texas and in this judicial district and EPS' products and solutions are used in customers' facilities in the State of Texas and in this judicial district. *See* https://web.archive.org/web/20250324155206/https://us.epg.com/resources/case-studies/detail/vestas (last accessed 8/26/2025) (highlighting use of EPS' warehouse management solution in Houston, Texas).

8.      The Court's exercise of jurisdiction over EPS will not offend traditional notions of fair play and substantial justice.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400 because EPS has its principal place of business in this judicial district, because EPS has a regular and established place of business in this judicial district, and because EPS has committed acts of infringement in this judicial district—including selling and distributing infringing products across this judicial district. For example, EPS confirmed that its principal place of business is located at 17505 Interstate Hwy. 35W, Northlake, TX 76262. Exhibit 8 at p.1.

## HONEYWELL'S HIGH-PERFORMANCE VOICE AND WAREHOUSE MANAGEMENT PRODUCTS AND HISTORY OF INNOVATION

10.      Honeywell traces its roots to 1904 and an engineer named Mark Honeywell from Wabash, Indiana, who developed and installed the first hot-water-heating system in the United States. Honeywell would later play a key role in U.S. war efforts, inventing and manufacturing the first electronic autopilot system. After entering the computer business through a merger with

Raytheon Corporation in 1957, Honeywell developed and engineered the instruments that safely landed Neil Armstrong and Buzz Aldrin on the moon. Research is one of the keys to Honeywell's success and provides the necessary cornerstone for its innovative products. As a result of its research and development efforts, Honeywell owns over 31,000 patents.

11.     Vocollect was founded in 1987 as a voice solutions corporation.

12.     Vocollect was acquired by Intermec, Inc. in 2011 for over $190 million. In 2013 Honeywell acquired Intermec, Inc.

13.     At the time of its acquisition by Intermec Inc., Vocollect was the industry leader in creating and providing voice-centric solutions for mobile workers in distribution and warehouse environments worldwide. Its speech recognition software and extreme recognition accuracy of in-vocabulary speech helped customers achieve a higher level of business performance through voice. At that time, over 300,000 workers worldwide used Vocollect's comprehensive voice solutions to distribute more than $3 billion in goods from distribution centers and warehouses to customer locations.

14.     Now, Vocollect is a part of Honeywell's Industrial Automations business group, providing customers with best-in-class voice-enabled workflow processes and helping streamline mobile workforces.

15.     Vocollect's solutions provide advanced data collection, automated documentation and analytics capabilities, enabling customers to optimize their mobile workforce's productivity while ensuring process compliance. With Vocollect's solutions, customers can monitor real-time throughput targets and inventory levels, ensure continuous process improvements, and make better informed decisions to move the business forward and meet anticipated demands.

16.     Vocollect's solutions further empower a mobile workforce by freeing up employees' hands and eyes with voice-guided workflows that help them pick and pack materials safely, efficiently, and accurately. For example, Vocollect's solutions increase productivity by more than 30% and can provide over 99% order accuracy rates.

17.     Currently, Vocollect has over 290 issued patents currently in force that serve as its platform of innovation.

18.     Intelligrated was founded in 2001. Intelligrated was acquired by Honeywell in August 2016 in a transaction valued at $1.5 billion.

19.     Intelligrated is now also primarily a part of Honeywell's Industrial Automations business group and provides customers with best-in-class material handling solutions to optimize and manage warehouse operations.

20.     Intelligrated designs, manufactures, integrates, and installs complete material handling automation solutions, including advanced robotic applications. By drawing on an ever-expanding portfolio and deep industry expertise, Intelligrated provides best-fit, scalable solutions to help businesses optimize and manage their entire fulfillment processes, from receiving to shipping and everything in between.

21.     Currently, Intelligrated has over 540 issued patents currently in force that serve as its platform of innovation.

## EPS' INFRINGING ACTIVITIES

22.     EPS has infringed and continues to infringe Honeywell's valuable intellectual property, including at least the Asserted Patents. EPS is using Honeywell's patented technology without a license or Honeywell's permission.

23.     Based on the information currently available to Honeywell, at least EPS's Lydia voice software, EPS's warehouse management system, EPS's warehouse control system, EPS's EPG One, EPS's Voxter computers, and EPS's Lydia VoiceWear infringe Honeywell's patents.

24.     According to EPS, its Lydia voice software ("Lydia Voice") is "the leading voice picking solution for logistics and industry." https://lydia-voice.com/ (last accessed on 8/26/2025). EPS also states that its "Warehouse Management System LFS actively guides the movement of all manual and automated storage units intelligently connecting your warehouse" and that its "Warehouse Control System (WCS) empowers warehouses with manufacturer-independent software for full visibility and comprehensive control over material flow." https://epg.com/logistics-software/warehouse-control-system/ (last accessed on 8/26/2025).

25.     EPS also states that its EPG ONE Supply Chain Execution Suite is "a comprehensive solution for efficient logistics management" that includes "warehouse management software to warehouse automation, route optimization, shipping logistics and all the way to workforce management and contract management." https://epg.com/logistics-software/ (last accessed on 8/26/2025).

26.     EPS also markets and sells hardware products that use and incorporate Lydia Voice. For example, EPS markets and sells the Voxter Vantage, which EPS describes as a "mobile voice computer" that "was specifically developed to be used with LYDIA Voice." https://www.lydia-voice.com/gb/voice-hardware/voxter-vantage (last accessed on 8/26/2025). An image of the Voxter Vantage is shown below.



*Id.*

27.     EPS also markets and sells various models of Lydia VoiceWear, which are a range of "unique picking vest[s]" that "open[] up new dimensions in ergonomic practices during the picking process with its integrated speakers and microphones." https://www.lydia-voice.com/gb/voice-hardware/voicewear (last accessed on 8/26/2025). Exemplary images of EPS's VoiceWear models are shown below.





*Id.*

28.    Honeywell has complied with 35 U.S.C. § 287.

29.    Honeywell's patents are publicly available from the United States Patent Office and other online resources.

30.    Also, Honeywell properly marks its products by its virtual marking practice. *See* https://www.hsmpats.com/ & https://www.honeywell.com/us/en/patents.

31.    To the extent necessary, Honeywell also provided notice to EPS of its infringement prior to filing of this lawsuit.

32.    On January 18, 2022, Honeywell sent EPS a letter asserting that EPS infringed 3 Honeywell patents: U.S. 7,609,669; U.S. 8,700,405; and U.S. 9,642,184. The letter included detailed claim charts citing publicly available information demonstrating how EPS infringed at least one claim of each patent.

33.    On February 16, 2022, Moore & Van Allen PLLC ("MVA"), acting on behalf of EPS, responded to Honeywell's letter by alleging in a conclusory fashion that the asserted patents were invalid. EPS did not even attempt to compare the alleged prior art to the claims of Honeywell's asserted patents.

34.    On May 2, 2023, Honeywell responded to MVA, highlighting the deficiencies in EPS's invalidity arguments. Honeywell further identified three additional patents infringed by EPS: U.S. 7,885,419; U.S. 8,255,219; and EP 2,359,362. The letter included detailed claim charts citing publicly available information demonstrating how EPS infringed at least one claim of each patent.

35.    On September 8, 2023, after receiving no correspondence from EPS or its attorneys at MVA for over four months, Honeywell, through its attorneys at Alston & Bird LLP ("A&B"),

sent a follow up letter to MVA in which it asserted infringement of three additional patents:  U.S. 9,361,882; U.S. 8,550,354; and U.S. 8,914,290.

36.    On September 27, 2023, EPS responded to Honeywell's letter seeking claim charts for the three additional patents, as well as further details on Honeywell's response to EPS's invalidity arguments.

37.    On December 5, 2023, A&B responded on behalf of Honeywell providing claim charts citing publicly available information for each of the three newly-asserted patents and detailed responses to EPS's deficient invalidity arguments.

38.    On February 28, 2024, after not receiving any correspondence from EPS or its counsel at MVA for nearly three months, yet again, A&B followed up with EPS.

39.    On March 5, 2024, MVA responded again asserting that Honeywell's patents were invalid and concluding, in a single sentence that lacked any technical details, that EPS also does not infringe the asserted patents.

40.    On June 23, 2024, Honeywell responded by providing detailed explanations of why the prior art does not render the asserted patents invalid. Honeywell also accused EPS of infringing 4 additional patents: U.S. 7,827,032; U.S. 8,386,261; U.S. 7,949,533; and U.S. 11,817,078. The letter included detailed claim charts citing publicly available information demonstrating how EPS infringed at least one claim of each patent.

41.    On August 14, 2024, business representatives from EPS and Honeywell met in Charlotte, North Carolina, to discuss Honeywell's claims of infringement.

42.    On August 28, 2024, MVA sent a letter to Honeywell summarily concluding that EPS did not infringe any of the asserted patents and that all the asserted patents were invalid but declining to discuss the substantive merits any further.

43.     On July 9, 2025, EPS filed a lawsuit against Honeywell in the Western District of North Carolina seeking a declaratory judgement that "it has not violated any patent rights purportedly owned by [Honeywell]." Exhibit 8 at 1.

44.     EPS's actions are willful or at least objectively reckless as to the risk of infringing a valid patent, and this objective risk was either known or should have been known by EPS as to all Asserted Patent.

## THE ASSERTED PATENTS[1]

45.     The '336 Patent, entitled "Distinguishing user speech from background speech in speech-dense environments," issued on October 26, 2021, and names David Hardek as the inventor. The 336 Patent issued from U.S. Patent Application Serial No. 16/695,555, filed on November 26, 2019. A true and accurate copy of the '336 Patent is attached hereto as Exhibit 5.

46.     Vocollect is the owner and assignee of the entire right, title, and interest in and to the '336 Patent and holds the right to sue and recover damages for infringement thereof.

47.     The '139 Patent, entitled "Distinguishing user speech from background speech in speech-dense environments," issued on August 6, 2024, and names David Hardek as the inventor. The '139 Patent issued from U.S. Patent Application Serial No. 18/328,034, filed on June 2, 2023. A true and accurate copy of the '139 Patent is attached hereto as Exhibit 6.

48.     Vocollect is the owner and assignee of the entire right, title, and interest in and to the 139 Patent and holds the right to sue and recover damages for infringement thereof.

---

[1] All descriptions of the inventions herein are presented to give a general background of those inventions. Such statements are not intended to be used, nor should be used, for purposes of patent claim interpretation. Honeywell presents these statements subject to, and without waiver of, its right to argue that claim terms should be construed in a particular way, as contemplated by claim interpretation jurisprudence and the relevant evidence.

49.    The '261 Patent, entitled "Training/coaching system for a voice-enabled work environment," issued on February 26, 2013, and names Mark Mellott, Richard Bates, Michael Laughery, and James Logan as inventors. The '261 Patent issued from U.S. Patent Application Serial No. 12/616,964, filed on November 12, 2009. A true and accurate copy of the '261 Patent is attached hereto as Exhibit 1.

50.    Vocollect is the owner and assignee of the entire right, title, and interest in and to the 261 Patent and holds the right to sue and recover damages for infringement thereof.

51.    The '940 Patent, entitled "Method and apparatus for optimized shipping strategies accounting for endpoint requirements," issued on October 6, 2015, and names Hazem Nizar An Nashif and Thomas Brady as inventors. The '940 Patent issued from U.S. Patent Application Serial No. 13/068,940, filed on May 24, 2011. A true and accurate copy of the '940 Patent is attached hereto as Exhibit 2.

52.    Intelligrated is the owner and assignee of the entire right, title, and interest in and to the 940 Patent and holds the right to sue and recover damages for infringement thereof.

53.    The '504 Patent, entitled "Annotating three-dimensional displays," issued on August 14, 2018, and names Henry Chen, Tom Plocher, Jian Geng Du, and Liana Kiff as inventors. The '504 Patent issued from U.S. Patent Application Serial No. 15/442,195, filed on February 24, 2017. A true and accurate copy of the '504 Patent is attached hereto as Exhibit 3.

54.    Honeywell International is the owner and assignee of the entire right, title, and interest in and to the '504 Patent and holds the right to sue and recover damages for infringement thereof.

55.    The '863 Patent, entitled "Annotating three-dimensional displays of a particular view of a 3D model," issued on September 8, 2020, and names Henry Chen, Tom Plocher, Jian

Geng Du, and Liana Kiff as inventors. The '863 Patent issued from U.S. Patent Application Serial No. 16/102,870, filed on August 14, 2018. A true and accurate copy of the '863 Patent is attached hereto as Exhibit 4.

56.     Honeywell International is the owner and assignee of the entire right, title, and interest in and to the '863 Patent and holds the right to sue and recover damages for infringement thereof.

57.     The '678 Patent, entitled "Distinguishing user speech from background speech in speech-dense environments," issued on August 26, 2025, and names David Hardek as the inventor. The '678 Patent issued from U.S. Patent Application Serial No. 18/452,351, filed on August 18, 2023. A true and accurate copy of the '678 Patent is attached hereto as Exhibit 7.

58.     Vocollect is the owner and assignee of the entire right, title, and interest in and to the '678 Patent and holds the right to sue and recover damages for infringement thereof.

59.     Each of the Asserted Patents is valid and enforceable.

60.     Plaintiff owns all rights, title, and interest in and to each of the Asserted Patents and possesses all rights of recovery.

## COUNT I – INFRINGEMENT OF THE '336 PATENT

61.     Honeywell incorporates by reference the allegations contained in all preceding paragraphs.

62.     EPS has directly infringed and continues to directly infringe the claims of the '336 Patent—both literally and under the doctrine of equivalents—by making, using, selling, and/or offering for sale products that embody the inventions disclosed in the '336 Patent, including EPS's Lydia Voice.

63.     A non-limiting chart evidencing EPS's infringement of claim 17 of the '336 Patent is attached hereto as Exhibit 9. The selection of claim(s) should not be considered limiting, and

additional claims of the '336 Patent and the accused functionality will be disclosed in compliance with the Court's rules related to infringement contentions.

64.     EPS also indirectly infringed and continues to indirectly infringe the claims of the '336 Patent with knowledge of or being willfully blind that its actions constitute infringement, at least as of the filing of this Complaint.

65.     As a non-limiting example, end users of Lydia Voice directly infringe the claims of the '336 Patent by using the Lydia Voice in the United States.

66.     On information and belief, EPS has had knowledge of or was willfully blind to the '336 Patent and that its actions constitute infringement since at least the filing of this Complaint.

67.     EPS had induced and continues to induce infringement of the '336 Patent by providing information and instruction on using Lydia Voice in an infringing manner evidenced at least by: (1) marketing and sales materials provided to its customers and potential customers through its website and its other marketing activities; (2) the instructions and information contained in EPS's instructional materials; and (3) instructional videos published by EPS on YouTube. For example, EPS provides numerous use case studies, videos, and examples on its website showing induced infringement of the '336 Patent. *See, e.g.*, https://lydia-voice.com/us/lydia-voice-suite/ (last accessed 8/26/2025); https://lydia-voice.com/us/references/case-studies/ (last accessed 8/26/2025); https://lydia-voice.com/us/voice-know-how/voice-picking/ (last accessed 8/26/2025); https://lydia-voice.com/us/references/videos/ (last accessed 8/26/2025); (https://www.youtube.com/@EhrhardtPartnerGroup (last accessed 8/26/2025). EPS knew its activities were inducing infringement at least through copying Honeywell's patented technology.

68.    EPS contributes to infringement of the '336 Patent by others by marketing and selling Lydia Voice, which is especially made for infringing use, with the knowledge that such use is infringing, and with the knowledge that these products are part to such infringing uses.

69.    Despite its knowledge of the '336 Patent, EPS continues to infringe the patent. Accordingly, EPS's infringement is willful.

70.    As a result of EPS's infringement of the '336 Patent, Honeywell has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law. Unless enjoined by this Court, EPS's infringement will continue, resulting in further irreparable harm to Honeywell.

71.    Honeywell has complied with 35 U.S.C. § 287 with respect to the '336 Patent as reflected by its virtual marking practice. *See* https://www.hsmpats.com/ & https://www.honeywell.com/us/en/patents.

72.    Honeywell is entitled to recover damages from EPS, including lost profits, but in no event less than a reasonable royalty, adequate to compensate for the infringement.

73.    EPS's unlawful actions have caused, and will continue to cause, Honeywell irreparable harm to its business and reputation unless enjoined.

## COUNT II – INFRINGEMENT OF THE '261 PATENT

74.    Honeywell incorporates by reference the allegations contained in all preceding paragraphs.

75.    EPS has directly infringed and continues to directly infringe the claims of the '261 Patent—both literally and under the doctrine of equivalents—by making, using, selling, and/or offering for sale products that embody the inventions disclosed in the '261 Patent, including EPS's Lydia Voice on mobile computers.

76.    A non-limiting chart evidencing EPS's infringement of claim 6 of the '261 Patent is attached hereto as Exhibit 10. The selection of claim(s) should not be considered limiting, and additional claims of the '261 Patent and the accused functionality will be disclosed in compliance with the Court's rules related to infringement contentions.

77.    EPS also indirectly infringed and continues to indirectly infringe the claims of the '261 Patent with knowledge of or being willfully blind that its actions constitute infringement, at least as of June 23, 2024, when Honeywell put EPS on notice of its infringement of this patent.

78.    As a non-limiting example, end users of Lydia Voice directly infringe the claims of the '261 Patent by using Lydia Voice on mobile computers in the United States.

79.    On information and belief, EPS has had knowledge of or was willfully blind to the '261 Patent and that its actions constitute infringement since at least the filing of this Complaint.

80.    EPS had induced and continues to induce infringement of the '261 Patent by providing information and instruction on using Lydia Voice on mobile computers in an infringing manner evidenced at least by: (1) marketing and sales materials provided to its customers and potential customers through its website and its other marketing activities; (2) the instructions and information contained in EPS's instructional materials; and (3) instructional videos published by EPS on YouTube. For example, EPS provides numerous use case studies, videos, and examples on its website showing induced infringement of the '261 Patent. *See, e.g.*, https://lydia-voice.com/us/lydia-voice-suite/ (last accessed 8/26/2025); https://lydia-voice.com/us/references/case-studies/ (last accessed 8/26/2025); https://lydia-voice.com/us/voice-know-how/voice-picking/ (last accessed 8/26/2025); https://lydia-voice.com/us/references/videos/ (last accessed 8/26/2025); (https://www.youtube.com/@EhrhardtPartnerGroup (last accessed

8/26/2025). EPS knew its activities were inducing infringement at least through copying Honeywell's patented technology.

81.    EPS contributes to infringement of the '261 Patent by others by marketing and selling Lydia Voice on mobile computers, which is especially made for infringing use, with the knowledge that such use is infringing, and with the knowledge that these products are part to such infringing uses.

82.    Despite its knowledge of the '261 Patent, EPS continues to infringe the patent. Accordingly, EPS's infringement is willful.

83.    As a result of EPS's infringement of the '261 Patent, Honeywell has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law. Unless enjoined by this Court, EPS's infringement will continue, resulting in further irreparable harm to Honeywell.

84.    Honeywell is entitled to recover damages from EPS, including lost profits, but in no event less than a reasonable royalty, adequate to compensate for the infringement.

85.    EPS's unlawful actions have caused, and will continue to cause, Honeywell irreparable harm to its business and reputation unless enjoined.

<u>**COUNT III – INFRINGEMENT OF THE '940 PATENT**</u>

86.    Honeywell incorporates by reference the allegations contained in all preceding paragraphs.

87.    EPS has directly infringed and continues to directly infringe the claims of the '940 Patent—both literally and under the doctrine of equivalents—by making, using, selling, and/or offering for sale products that embody the inventions disclosed in the '940 Patent, including EPS's warehouse management system WMS / LFS and EPS One Suite ("Warehouse Management System").

88.    On information and belief, EPS has directly infringed the claims of the '940 Patent by developing, testing, and using its Warehouse Management System in the United States.

89.    A non-limiting chart evidencing EPS's infringement of claim 7 of the '940 Patent is attached hereto as Exhibit 11. The selection of claim(s) should not be considered limiting, and additional claims of the '940 Patent and the accused functionality will be disclosed in compliance with the Court's rules related to infringement contentions.

90.    EPS also indirectly infringed and continues to indirectly infringe the claims of the 940 Patent with knowledge of or being willfully blind that its actions constitute infringement, at least as of the filing of this Complaint.

91.    As a non-limiting example, end users of EPS's Warehouse Management System directly infringe the claims of the '940 Patent by using EPS's Warehouse Management System in the United States.

92.    On information and belief, EPS has had knowledge of or was willfully blind to the '940 Patent and that its actions constitute infringement since at least the filing of this Complaint.

93.    EPS had induced and continues to induce infringement of the '940 Patent by providing information and instruction on using EPS's Warehouse Management System in an infringing manner evidenced at least by: (1) marketing and sales materials provided to its customers and potential customers through its website and its other marketing activities; (2) the instructions and information contained in EPS's instructional materials; and (3) instructional videos published by EPS on YouTube. For example, EPS provides numerous use case studies, videos, and examples on its website showing induced infringement of the '940 Patent. *See, e.g.*, https://epg.com/us/supply-chain-solutions/warehouse-management-system/    (last accessed 8/26/2025);    https://epg.com/us/logistics-expertise/case-studies/    (last accessed 8/26/2025);

https://epg.com/us/logistics-expertise/white-paper/ (last accessed 8/26/2025); https://epg.com/us/logistics-expertise/video/ (last accessed 8/26/2025); https://www.youtube.com/@EhrhardtPartnerGroup (last accessed 8/26/2025). EPS knew its activities were inducing infringement at least through copying Honeywell's patented technology.

94.     EPS contributes to infringement of the '940 Patent by others by marketing and selling EPS's Warehouse Management System, which is especially made for infringing use, with the knowledge that such use is infringing, and with the knowledge that these products are part to such infringing uses.

95.     Despite its knowledge of the '940 Patent, EPS continues to infringe the patent. Accordingly, EPS's infringement is willful.

96.     As a result of EPS's infringement of the '940 Patent, Honeywell has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law. Unless enjoined by this Court, EPS's infringement will continue, resulting in further irreparable harm to Honeywell.

97.     Honeywell has complied with 35 U.S.C. § 287 with respect to the '940 Patent as reflected by its virtual marking practice. *See* https://www.hsmpats.com/ & https://www.honeywell.com/us/en/patents.

98.     Honeywell is entitled to recover damages from EPS, including lost profits, but in no event less than a reasonable royalty, adequate to compensate for the infringement.

99.     EPS's unlawful actions have caused, and will continue to cause, Honeywell irreparable harm to its business and reputation unless enjoined.

## COUNT IV – INFRINGEMENT OF THE '504 PATENT

100.     Honeywell incorporates by reference the allegations contained in all preceding paragraphs.

101.    EPS has directly infringed and continues to directly infringe the claims of the '504 Patent—both literally and under the doctrine of equivalents—by making, using, selling, and/or offering for sale products that embody the inventions disclosed in the '504 Patent, including EPS's Warehouse Control System (WCS) and EPS ONE (collectively, "Warehouse Control System").

102.    On information and belief, EPS has directly infringed the claims of the '504 Patent by developing, testing, and using its Warehouse Control System in the United States.

103.    A non-limiting chart evidencing EPS's infringement of claim 1 of the '504 Patent is attached hereto as Exhibit 12. The selection of claim(s) should not be considered limiting, and additional claims of the '504 Patent and the accused functionality will be disclosed in compliance with the Court's rules related to infringement contentions.

104.    EPS also indirectly infringed and continues to indirectly infringe the claims of the '504 Patent with knowledge of or being willfully blind that its actions constitute infringement, at least as of the filing of this Complaint.

105.    As a non-limiting example, end users of the Warehouse Control System directly infringe the claims of the '504 Patent by using EPS's Warehouse Control System in the United States.

106.    On information and belief, EPS has had knowledge of or was willfully blind to the '504 Patent and that its actions constitute infringement since at least as of the filing of this Complaint.

107.    EPS had induced and continues to induce infringement of the '504 Patent by providing information and instruction on using EPS's Warehouse Control System in an infringing manner evidenced at least by: (1) marketing and sales materials provided to its customers and potential customers through its website and its other marketing activities; (2) the instructions and

information contained in EPS's instructional materials; and (3) instructional videos published by EPS on YouTube. For example, EPS provides numerous use case studies, videos, and examples on its website showing induced infringement of the '504 Patent. *See, e.g.*, https://epg.com/us/supply-chain-solutions/warehouse-control-system-wcs/ (last accessed 8/26/2025); https://epg.com/us/logistics-expertise/case-studies/ (last accessed 8/26/2025); https://epg.com/us/logistics-expertise/white-paper/ (last accessed 8/26/2025); https://epg.com/us/logistics-expertise/video/ (last accessed 8/26/2025); https://www.youtube.com/@EhrhardtPartnerGroup (last accessed 8/26/2025). EPS knew its activities were inducing infringement at least through copying Honeywell's patented technology.

108.   EPS contributes to infringement of the '504 Patent by others by marketing and selling EPS's Warehouse Control System, which is especially made for infringing use, with the knowledge that such use is infringing, and with the knowledge that these products are part to such infringing uses.

109.   Despite its knowledge of the '504 Patent, EPS continues to infringe the patent. Accordingly, EPS's infringement is willful.

110.   As a result of EPS's infringement of the '504 Patent, Honeywell has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law. Unless enjoined by this Court, EPS's infringement will continue, resulting in further irreparable harm to Honeywell.

111.   Honeywell has complied with 35 U.S.C. § 287 with respect to the '504 Patent as reflected by its virtual marking practice. *See* https://www.hsmpats.com/ & https://www.honeywell.com/us/en/patents.

112.    Honeywell is entitled to recover damages from EPS, including lost profits, but in no event less than a reasonable royalty, adequate to compensate for the infringement.

113.    EPS's unlawful actions have caused, and will continue to cause, Honeywell irreparable harm to its business and reputation unless enjoined.

### COUNT V – INFRINGEMENT OF THE '863 PATENT

114.    Honeywell incorporates by reference the allegations contained in all preceding paragraphs.

115.    EPS has directly infringed and continues to directly infringe the claims of the '863 Patent—both literally and under the doctrine of equivalents—by making, using, selling, and/or offering for sale products that embody the inventions disclosed in the '863 Patent, including EPS's Warehouse Management Software.

116.    On information and belief, EPS has directly infringed the claims of the '863 Patent by developing, testing, and using its Warehouse Management Software in the United States.

117.    A non-limiting chart evidencing EPS's infringement of claim 1 of the '863 Patent is attached hereto as Exhibit 13. The selection of claim(s) should not be considered limiting, and additional claims of the '863 Patent and the accused functionality will be disclosed in compliance with the Court's rules related to infringement contentions.

118.    EPS also indirectly infringed and continues to indirectly infringe the claims of the '863 Patent with knowledge of or being willfully blind that its actions constitute infringement, at least as of the filing of this Complaint.

119.    As a non-limiting example, end users of the Warehouse Management Software directly infringe the claims of the '863 Patent by using EPS's Warehouse Management Software in the United States.

120.    On information and belief, EPS has had knowledge of or was willfully blind to the '863 Patent and that its actions constitute infringement since at least as of the filing of this Complaint.

121.    EPS had induced and continues to induce infringement of the '863 Patent by providing information and instruction on using EPS's Warehouse Management Software in an infringing manner evidenced at least by: (1) marketing and sales materials provided to its customers and potential customers through its website and its other marketing activities; (2) the instructions and information contained in EPS's instructional materials; and (3) instructional videos published by EPS on YouTube. For example, EPS provides numerous use case studies, videos, and examples on its website showing induced infringement of the '863 Patent. *See, e.g.*, https://epg.com/us/supply-chain-solutions/warehouse-control-system-wcs/    (last    accessed 8/26/2025);    https://epg.com/us/logistics-expertise/case-studies/    (last    accessed    8/26/2025); https://epg.com/us/logistics-expertise/white-paper/    (last    accessed    8/26/2025); https://epg.com/us/logistics-expertise/video/    (last    accessed    8/26/2025); https://www.youtube.com/@EhrhardtPartnerGroup    (last    accessed    8/26/2025). EPS knew its activities were inducing infringement at least through copying Honeywell's patented technology.

122.    EPS contributes to infringement of the '863 Patent by others by marketing and selling EPS's Warehouse Management Software, which is especially made for infringing use, with the knowledge that such use is infringing, and with the knowledge that these products are part to such infringing uses.

123.    Despite its knowledge of the '863 Patent, EPS continues to infringe the patent. Accordingly, EPS's infringement is willful.

124.    As a result of EPS's infringement of the '863 Patent, Honeywell has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law. Unless enjoined by this Court, EPS's infringement will continue, resulting in further irreparable harm to Honeywell.

125.    Honeywell has complied with 35 U.S.C. § 287 with respect to the '863 Patent as reflected by its virtual marking practice. *See* https://www.hsmpats.com/ & https://www.honeywell.com/us/en/patents.

126.    Honeywell is entitled to recover damages from EPS, including lost profits, but in no event less than a reasonable royalty, adequate to compensate for the infringement.

127.    EPS's unlawful actions have caused, and will continue to cause, Honeywell irreparable harm to its business and reputation unless enjoined.

## COUNT VI – INFRINGEMENT OF THE '139 PATENT

128.    Honeywell incorporates by reference the allegations contained in all preceding paragraphs.

129.    EPS has directly infringed and continues to directly infringe the claims of the 139 Patent—both literally and under the doctrine of equivalents—by making, using, selling, and/or offering for sale products that embody the inventions disclosed in the '139 Patent, including EPS's Lydia VoiceWear, Voxter computer, and Lydia Voice ("VoiceWear Suite").

130.    A non-limiting chart evidencing EPS's infringement of claim 28 of the '139 Patent is attached hereto as Exhibit 14. The selection of claim(s) should not be considered limiting, and additional claims of the '139 Patent and the accused functionality will be disclosed in compliance with the Court's rules related to infringement contentions.

131.    EPS also indirectly infringed and continues to indirectly infringe the claims of the '139 Patent with knowledge of or being willfully blind that its actions constitute infringement, at least as of the filing of this Complaint.

132.    As a non-limiting example, end users of EPS's VoiceWear Suite directly infringe the claims of the '139 Patent by using EPS's VoiceWear Suite in the United States.

133.    On information and belief, EPS has had knowledge of or was willfully blind to the 139 Patent and that its actions constitute infringement since at least the filing of this Complaint.

134.    EPS had induced and continues to induce infringement of the '139 Patent by providing information and instruction on using EPS's VoiceWear Suite in an infringing manner evidenced at least by: (1) marketing and sales materials provided to its customers and potential customers through its website and its other marketing activities; (2) the instructions and information contained in EPS's instructional materials; and (3) instructional videos published by EPS on YouTube. For example, EPS provides numerous use case studies, videos, and examples on its website showing induced infringement of the '139 Patent. *See, e.g.*, https://lydia-voice.com/us/lydia-voice-suite/ (last accessed 8/26/2025); https://lydia-voice.com/us/references/case-studies/ (last accessed 8/26/2025); https://lydia-voice.com/us/voice-know-how/voice-picking/ (last accessed 8/26/2025); https://lydia-voice.com/us/references/videos/ (last accessed 8/26/2025); (https://www.youtube.com/@EhrhardtPartnerGroup (last accessed 8/26/2025). EPS knew its activities were inducing infringement at least through copying Honeywell's patented technology.

135.    EPS contributes to infringement of the '139 Patent by others by marketing and selling EPS's VoiceWear Suite, which is especially made for infringing use, with the knowledge

that such use is infringing, and with the knowledge that these products are part to such infringing uses.

136.    Despite its knowledge of the '139 Patent, EPS continues to infringe the patent. Accordingly, EPS's infringement is willful.

137.    As a result of EPS's infringement of the '139 Patent, Honeywell has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law. Unless enjoined by this Court, EPS's infringement will continue, resulting in further irreparable harm to Honeywell.

138.    Honeywell is entitled to recover damages from EPS, including lost profits, but in no event less than a reasonable royalty, adequate to compensate for the infringement.

139.    EPS's unlawful actions have caused, and will continue to cause, Honeywell irreparable harm to its business and reputation unless enjoined.

## COUNT VII – INFRINGEMENT OF THE '678 PATENT

140.    Honeywell incorporates by reference the allegations contained in all preceding paragraphs.

141.    EPS has directly infringed and continues to directly infringe the claims of the '678 Patent—both literally and under the doctrine of equivalents—by making, using, selling, and/or offering for sale products that embody the inventions disclosed in the '678 Patent, including EPS's Lydia voice software.

142.    A non-limiting chart evidencing EPS's infringement of claim 1 of the '678 Patent is attached hereto as Exhibit 15. The selection of claim(s) should not be considered limiting, and additional claims of the '678 Patent and the accused functionality will be disclosed in compliance with the Court's rules related to infringement contentions.

143.    EPS also indirectly infringed and continues to indirectly infringe the claims of the '678 Patent with knowledge of or being willfully blind that its actions constitute infringement, at least as of the filing of this Complaint.

144.    As a non-limiting example, end users of Lydia Voice directly infringe the claims of the '678 Patent by using the Lydia Voice in the United States.

145.    On information and belief, EPS has had knowledge of or was willfully blind to the '678 Patent and that its actions constitute infringement since at least the filing of this Complaint.

146.    EPS had induced and continues to induce infringement of the '678 Patent by providing information and instruction on using Lydia Voice in an infringing manner evidenced at least by: (1) marketing and sales materials provided to its customers and potential customers through its website and its other marketing activities; (2) the instructions and information contained in EPS's instructional materials; and (3) instructional videos published by EPS on YouTube. For example, EPS provides numerous use case studies, videos, and examples on its website showing induced infringement of the '678 Patent. *See, e.g.*, https://lydia-voice.com/us/lydia-voice-suite/ (last accessed 8/26/2025); https://lydia-voice.com/us/references/case-studies/ (last accessed 8/26/2025); https://lydia-voice.com/us/voice-know-how/voice-picking/ (last accessed 8/26/2025); https://lydia-voice.com/us/references/videos/ (last accessed 8/26/2025); (https://www.youtube.com/@EhrhardtPartnerGroup (last accessed 8/26/2025). EPS knew its activities were inducing infringement at least through copying Honeywell's patented technology.

147.    EPS contributes to infringement of the '678 Patent by others by marketing and selling Lydia Voice, which is especially made for infringing use, with the knowledge that such use is infringing, and with the knowledge that these products are part to such infringing uses.

148.    Despite its knowledge of the '678 Patent, EPS continues to infringe the patent. Accordingly, EPS's infringement is willful.

149.    As a result of EPS's infringement of the '678 Patent, Honeywell has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law. Unless enjoined by this Court, EPS's infringement will continue, resulting in further irreparable harm to Honeywell.

150.    Honeywell is entitled to recover damages from EPS, including lost profits, but in no event less than a reasonable royalty, adequate to compensate for the infringement.

151.    EPS's unlawful actions have caused, and will continue to cause, Honeywell irreparable harm to its business and reputation unless enjoined.

## DAMAGES

152.    As a result of EPS's acts of infringement, Honeywell has suffered actual and consequential damages. However, Honeywell does not yet know the full extent of the infringement, and its extent cannot be ascertained except through discovery and special accounting. To the fullest extent permitted by law, Honeywell seeks recovery of damages at least for reasonable royalties, unjust enrichment, and benefits received by EPS as a result of using misappropriated Honeywell technology. Honeywell further seeks all other damages to which Honeywell is entitled under law or in equity, including lost profits.

## DEMAND FOR JURY TRIAL

153.    Honeywell hereby respectfully requests a jury trial for all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Honeywell respectfully requests the following relief:

A.  the entry of judgment on the Complaint, including all claims, causes of action, and requests for relief therein, in favor of Honeywell and against Defendant;

B.  the entry of judgment that Defendant infringes, either literally and/or under the doctrine of equivalents, the Asserted Patents;

C.  the entry of judgment that Defendant's infringement of the Asserted Patents has been and continues to be willful;

D.  the entry of judgment against Defendant, awarding Honeywell actual damages in an amount sufficient to compensate Honeywell for Defendant's direct and indirect infringement of the Asserted Patents, until such time as Defendant ceases its infringing conduct;

E.  the entry of judgment against Defendant, awarding Honeywell enhanced damages pursuant to 35 U.S.C. § 284;

F.  the entry of judgment against Defendant, requiring Defendants to pay ongoing royalties;

G.  the entry of judgment against Defendants, awarding Honeywell pre-judgment and post-judgment interest to the full extent allowed under the law, as well as its costs and expenses;

H.  a determination that this is an exceptional case, and an award to Honeywell of its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

I.  an order for an accounting of damages for Defendant's acts of infringement;

J.  an award to Honeywell of its costs of suit;

K.  the entry of a preliminary and permanent injunction, enjoining Defendant, its officers, directors, agents, employees, parents, subsidiaries, affiliates, licensees, successors, and assigns, and those acting in concert or participation with them, from further acts of direct and/or indirect infringement of the Asserted Patents; and

L.  an award to Honeywell of such further and additional relief, whether legal or equitable,

that Honeywell requests, that the Court determines Honeywell to be entitled, or that the

Court deems just and proper.

Dated: August 29, 2025               Respectfully submitted,

*/s/ S. Benjamin Pleune*
S. Benjamin Pleune (NC Bar No. 28748) (admitted EDTX)
M. Scott Stevens (NC Bar No. 37828) (admitted EDTX)
Stephen R. Lareau (NC Bar No. 42992) (admitted EDTX)
Nicholas C. Marais (NC Bar No. 53533) (admitted EDTX)
ALSTON & BIRD LLP
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, North Carolina 28203
Telephone: (704) 444-1000
Facsimile: (704) 444-1935
Email: ben.pleune@alston.com
Email: scott.stevens@alston.com
Email: stephen.lareau@alston.com
Email: nic.marais@alston.com

Jeremy Whitley (SC Bar No. 72587) (admitted EDTX)
Adam J. Doane (NC Bar No. 52495) (admitted EDTX)
HONEYWELL INTERNATIONAL INC.
855 S. Mint Street
Charlotte, NC  28202
Telephone: 980-279-3055
Email: Jeremy.Whitley@honeywell.com
Email: Adam.Doane@honeywell.com

*Counsel for Plaintiffs*